VEDDER PRICE P.C.
Joshua A. Dunn
1633 Broadway, 31st Floor
New York, New York 10019
(212) 407-7700

*Counsel for Plaintiff The Huntington National Bank*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK, | |
| Plaintiff, | Case No. |
| -against- | ECF CASE |
| BRISTOW U.S. LLC, a Louisiana limited liability company, and BRISTOW GROUP INC., a Delaware corporation, | |
| Defendants. | |

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

Plaintiff, The Huntington National Bank ("Plaintiff" or "HNB"), by and through its counsel, for its Complaint for Damages and Declaratory Relief against Defendants, Bristow U.S. LLC ("Bristow" or "Lessee") and Bristow Group Inc. ("Bristow Group" and, together with Bristow, "Defendants"), states as follows:

**INTRODUCTION**

1.      This case arises from Bristow's breach of that certain Aircraft Lease (S/N 920021) (as amended, modified, supplemented and/or restated from time to time), dated as of December 29, 2011, between Bristow, as Lessee, and Wilmington Trust Company, as owner,

1

trustee and lessor for the benefit of HNB (the "Lease").[1]  A true and correct copy of the Lease, which is incorporated herein by reference, is attached hereto as **Exhibit 1**.

2. Bristow breached the Lease by, among other things, failing and refusing to return the Aircraft (as defined below) upon expiration of the Lease in accordance with the Return Addendum.[2]  Under the terms of the Lease, which includes the Return Addendum, in the event of any such failure, all of Bristow's obligations under the Lease continue and Bristow remains contractually liable to HNB for holdover rent, as well as any expenses incurred in enforcing HNB's rights thereunder, and all costs of suit, including, without limitation, reasonable attorneys' fees.

3. In addition, there exists an actual, justiciable controversy between HNB and Bristow as to Bristow's continuing obligations under the Lease, including its responsibility to pay HNB holdover rent and to cover the substantial costs of enrolling the Aircraft Engines in an Engine Management Program.  Thus, an immediate and definitive determination as to Bristow's continuing obligations under the Lease is necessary to resolve the controversy.

## THE PARTIES

4. HNB is a national banking association with its principle place of business in Columbus, Ohio.

---

[1] HNB is the owner of one hundred percent (100%) of the beneficial ownership interest in the Portfolio Assets, together with all of the estate, right, title and interest of the Trust Agreement dated as of April 3, 2006 (the "Trust") with respect to such Portfolio Assets, which include, without limitation, the Aircraft (as defined below), as more particularly described in the Assignment of Beneficial Interest by and between BAL Corporate Aviation, LLC as Assignor, and HNB as Assignee.  Thus, HNB is the beneficial interest holder of and with respect to all rights, duties and responsibilities of Lessor under, and the real party in interest with respect to, the Lease.

[2] All terms not defined herein shall have the meanings ascribed to them in the Lease.

5. Bristow is a Louisiana limited liability company with its principal place of business in New Iberia, Louisiana. Bristow is a provider of industrial aviation services, including helicopter transportation, search and rescue, and helicopter maintenance and training. The sole member of Bristow is Bristow Group.

6. Bristow Group is a Delaware corporation with its principle place of business in Houston, Texas. Bristow Group is the sole member of Bristow and also guaranteed Bristow's obligations under the Lease pursuant to a guaranty agreement dated December 29, 2011 (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit 2**.

### JURISDICTION AND VENUE

7. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(2) because: (a) the controversy is between citizens of different States; and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8. This Court has personal jurisdiction over Defendants because they have consented, pursuant to the express provisions of the Lease and the Guaranty, to the non-exclusive jurisdiction of this Court. (Lease § 16(f).)

9. Venue in this District is proper pursuant to the express forum selection clause contained within the Lease. (*Id*.)

### ALLEGATIONS COMMON TO ALL COUNTS

#### The Lease

10. Under the Lease, Bristow agreed to lease from HNB, and HNB agreed to lease to Bristow, that certain Sikorsky S-92 aircraft bearing U.S. Registration Mark N932BG and manufacturer's serial number 920021 (the "Aircraft"). (Lease § 1; Schedule No. 1 to Lease Supplement.)

11. The term of the Lease commenced on December 29, 2011 and expired on January 5, 2017, subject to Bristow's obligations under the Lease continuing under certain terms and conditions. (Lease § 3(a); Schedule No. 2 to Lease Supplement; Return Addendum ¶ (m).)

12. Under the Lease, Bristow agreed to pay to HNB monthly Rent of $185,249.75 for sixty (60) months commencing on January 5, 2012. (Lease § 3(b); Schedule No. 2-A to Lease Supplement.)

13. The Lease is a net lease and Bristow agreed that its payment obligations thereunder, which are guaranteed by Bristow Group, are absolute and unconditional. (Lease § 7; Guaranty §§ 1-2.)

14. Under the Lease, Bristow also agreed that certain events would constitute Events of Default, including, *inter alia*:

    (a) failure to pay Rent or any other amount due pursuant to the Lease or any Rider, Addendum or Supplement thereto (Lease § 13(a)(i));

    (b) failure to maintain, use or operate the Aircraft in compliance with applicable law (Lease § 13(a)(ii));

    (c) failure to return the Aircraft to HNB *on the date and in the manner required by the Lease* (Lease § 13(a)(vi) (emphasis added));

    (d) material inaccuracy in any representation or breach of warranty by Lessee in any financial statement or Lease Document (Lease § 13(a)(xi)); and

    (e) breach by Lessee of any other covenant, condition or agreement under the Lease that continues for thirty (30) days after Lessor's written notice to Lessee, shall constitute an Event of Default (Lease § 13(a)(xviii)).

15. Under the Lease, Bristow further agreed that if an Event of Default has occurred, HNB would be entitled to, among other things, and at its option: (a) proceed at law or in equity to specifically enforce Bristow's performance under the Lease and/or to recover damages; (b) declare the Lease to be in default and/or cancel the Lease and demand immediate return of the Aircraft in accordance with the terms of the Lease; (c) demand and recover from Bristow the

Liquidated Damages and other Rent whenever the same shall be due. (Lease § 13(b)(i)-(ii) and (vii).)

16. In addition, Bristow agreed as follows:

> Lessee shall be liable for, and pay to [HNB] upon demand, all costs, charges and expenses incurred by any Lessor Party in enforcing or protecting its rights under this Lease, whether by reason of any Default or Event of Default, or otherwise, including, without limitation, actual out of pocket legal fees, disbursements, insurance, expert witness fees, consultant fees, repossession, taxes, lien removal, recovery, storage, inspection, appraisal, repair, costs of transportation, refurbishing, advertising and brokers' fees, and other carrying costs and costs of sale, re-lease or other disposition of the Aircraft.

(Lease § 13(e).)

17. The Lease includes the Return Addendum, through which Bristow agreed, upon the expiration, cancellation, or other termination of the Lease, that it would return the Aircraft (together with all Records) to a location specified by HNB within the United States. (Return Addendum ¶ (a).)

18. The Return Addendum also required Bristow to keep the Aircraft and certain of its components enrolled in maintenance programs and/or contracts. Specifically with respect to the Aircraft's Engines, the Return Addendum states as follows:

> (ii) Engines. The Engines shall then be enrolled in the Engine Management Program; and with respect to both Engines, Lessee shall either (A) assign all of its rights and interests under the Engine Management Program, without cost or other condition to such assignment . . . (B) at no cost or expense to [HNB], arrange to have the Engines eligible with no initial "buy-in" or "start-up" costs to [HNB] to be completely covered (and not on a pro rata basis) under a service and maintenance contract between [HNB] (or its designee) and the manufacturer (or other entity acceptable to [HNB] in its sole discretion), which such service and maintenance provides for the complete maintenance and overhaul of the Engines for a fixed hourly rate . . . and *shall otherwise be in form and substance acceptable to [HNB]*, or (C) pay to [HNB] an amount equal to the current estimated cost of causing the Engines to be fully enrolled in an Engine Management Program. The payment required by sub-clause (C) shall be made by Lessee to [HNB] *on the Required Return Date* as liquidated damages, and not as a penalty, for Lessee's failure to comply with sub-clauses (A) and (B).

Return Addendum ¶ (f)(ii) (emphasis added).

19.   Under the Return Addendum, in the event Bristow failed to return the Aircraft at the time, place and in the condition specified therein (including under ¶¶ (a) and (f)(ii)), all of Bristow's obligations under the Lease would continue and Bristow would be required to pay holdover rent until the Aircraft is so returned. (Return Addendum ¶ (m).)

### Bristow's Breaches and HNB's Damages

20.   On the Expiration Date, Bristow failed to immediately return the Aircraft in accordance with the Return Addendum.

21.   In the months following the Expiration Date, the parties engaged in extensive negotiations surrounding the return of the Aircraft and the extent of Bristow's obligations under Return Addendum paragraph (f)(ii) relating to Engine maintenance contracts. During these discussions, the Aircraft remained in Bristow's or its duly-authorized agent's possession, custody, and control.

22.   HNB demanded that Bristow return the Aircraft to its designated return location at Meacham International Airport in Fort Worth, Texas, in accordance with Bristow's specific Engine maintenance contract obligations under the Return Addendum.

23.   In order to comply with those obligations, under paragraph (f)(ii) of the Return Addendum, Bristow had the following options: (A) assign all of its rights and interests under the Engine Management Program to HNB without cost or other conditions to same; (B) arrange to have the Engines eligible to be covered under a service and maintenance contract *acceptable to HNB* with no initial "buy-in" or "start-up" costs to HNB; or (C) pay HNB (*on the Required Return Date*) an amount equal to the estimated cost of causing the Engines to be fully enrolled in the Engine Management Program. (*See* Return Addendum ¶¶ (f)(ii)(A)-(C) (emphasis added).)

24.   Bristow has failed and refused to meet any of these obligations.

25. HNB placed Bristow on express notice of Bristow's ongoing failure to meet its obligations under the Lease and of HNB's continuing reservation of rights with respect thereto.

26. Pursuant to Return Addendum paragraph (m), HNB also demanded that Bristow pay holdover rent in the amount of $185,249.75 per month. A true and correct copy of HNB's most recent invoice to Bristow for holdover rent is attached hereto as **Exhibit 3**. To date, Bristow has failed and refused to pay HNB any holdover rent.

27. Instead, Bristow asserted that it met its return obligations under Return Addendum paragraph (f)(ii)(B) through its efforts to facilitate a proposed holding agreement with GE (the "Proposed Holding Agreement") with respect to its existing Maintenance Cost Per Hour Engine Services Agreement dated December 12, 2014 with General Electric Company ("GE") (the "MCPH Agreement") and related program.

28. However, the Proposed Holding Agreement was not acceptable to HNB in form and substance, as required by sub-paragraph (B) of paragraph (f)(ii) of the Return Addendum. Among other things, the Proposed Holding Agreement did not obligate GE to do anything, including to enter into a new MCPH agreement with HNB, nor did it identify the maintenance or other services that would be covered under any such new agreement, as required by the express terms contained in paragraph (f)(ii)(B) of the Return Addendum. Therefore, Bristow has not met its return obligations under sub-paragraph (B) of paragraph (f)(ii) of the Return Addendum.

29. Sub-paragraph (A) of paragraph (f)(ii) of the Return Addendum contemplates a transfer and/or assignment of the benefits of Bristow's Amended and Restated Total Assurance Program Agreement dated May 18, 2016 with Helicopter Support, Inc. (the "TAP Agreement") and the MCPH Agreement with GE. However, by Bristow's own admission, the TAP Agreement and MCPH Agreement were proprietary, confidential and not assignable. Accordingly, Bristow

has not met (and cannot meet) its return obligations under sub-paragraph (A) of paragraph (f)(ii) of the Return Addendum.

30.  With respect to sub-paragraph (C) of paragraph (f)(ii) of the Return Addendum, Bristow has never agreed to pay HNB for the cost of enrolling the Engines in a new Engine Management Program.

31.  HNB has obtained an estimate of a maintenance program "buy-in" under subparagraph (C) of paragraph (f)(ii) of the Return Addendum from Jet Support Services, Inc. ("JSSI"), which estimate is $744,593.00.  A true and correct copy of the JSSI estimate is attached hereto as **Exhibit 4**.

32.  On or about August 4, 2017, Bristow finally delivered the Aircraft to Meacham International Airport in Fort Worth, Texas, for storage at RSG Aviation Inc., the location previously designated by HNB, but without complying with any of its other obligations under Return Addendum paragraph (f)(ii).

33.  On or about the same day, Bristow also filed a Lease Termination Certificate and Disclaimer with the FAA.  The certificate contained several false statements, including, without limitation, that: (a) the Lease had been terminated, purportedly dated to be effective as of January 10, 2017, and (b) Bristow had fully satisfied the conditions set forth in the Return Addendum to the Lease.

34.  Bristow's failures, as described above, constitute one or more Events of Default under section 13(a) of the Lease, including, without limitation, subsections (i), (ii), (vi), (xi) and (xviii).

35.  On account of Bristow's continuing failure and refusal to return the Aircraft in accordance with its obligations under the Lease, including the Return Addendum, it has not

properly terminated the Lease and, to date, owes HNB holdover rent in the amount of $1,852,497.50 pursuant to paragraph (m) of the Return Addendum.

36. As a direct and proximate result of Lessee's material breaches of the Lease, HNB has suffered damages, and continues to suffer damages of at least $2,597.090.50, which includes, as set forth above, the sum of all holdover rent due and owing under the Return Addendum through December 4, 2017 (next payment due December 5, 2017), in addition to the estimated "buy-in" costs relating to the JSSI maintenance program, as reflected in Exhibit 4 hereto.

## COUNT I – BREACH OF LEASE

37. HNB repeats and realleges paragraphs 1 through 36 of this Complaint as and for this paragraph 37, as if fully set forth herein.

38. The Lease is a valid and legally enforceable contract.

39. Bristow Group guaranteed Bristow's obligations under the Lease.

40. Bristow breached the terms of the Lease by, among other things, failing and refusing to return the Aircraft to HNB upon expiration of the Lease in accordance with the Return Addendum, and failing to perform certain other obligations and covenants under the Lease, all as more fully detailed above.

41. HNB has at all times performed and fulfilled any and all of its obligations under the Lease, and all conditions precedent to this claim have been performed, satisfied and/or waived.

42. HNB has been damaged as a result of Bristow's breaches.

**WHEREFORE**, HNB prays for judgment in its favor and against Bristow and Bristow Group in an amount to be proven at trial, but no less than $2,597.090.50, in addition to all costs, charges and expenses, including reasonable attorneys' fees, accrued, and continuing to accrue

through and after the date of this filing, all other amounts due under the Lease, and such other and further relief as this Court shall deem just and appropriate.

## COUNT II – DECLARATORY JUDGMENT

43. HNB repeats and realleges paragraphs 1 through 36 of this Complaint as and for this Paragraph 43, as if fully set forth herein.

44. There is an actual, immediate, and justiciable controversy between HNB, on the one hand, and Bristow and Bristow Group, on the other hand, concerning Bristow's and Bristow Group's: (a) continuing obligation to pay holdover rent under Return Addendum paragraph (m); and (b) liability to HNB for the current estimated cost of enrolling the Engines in an Engine Maintenance Program under Return Addendum paragraph (f)(ii)(C).

45. This controversy is amenable to specific relief through a conclusive declaratory judgment.

46. HNB is entitled to a declaration that Bristow and Bristow Group remain liable to HNB for both holdover rent and the estimated cost of full enrollment of the Engines in a new Engine Maintenance Program.

**WHEREFORE**, HNB prays for a declaratory judgment:

(a) that Bristow and Bristow Group, as guarantor, remain liable for holdover rent pursuant to Return Addendum paragraph (m) until such time as HNB can sell or relet the Aircraft;

(b) that Bristow and Bristow Group, as guarantor, are liable to HNB for the current estimated cost of causing the Engines to be fully enrolled in an Engine Maintenance Program, per subsection (C) of section (f)(ii) of the Return Addendum;

(c) awarding HNB its costs, disbursements and attorneys' fees in accordance with the terms of the Lease; and

(d) awarding HNB such other relief as this Court may deem just and appropriate.

| | |
|---|---|
| Dated: New York, New York.<br>November 6, 2017 | Respectfully submitted,<br><br>**VEDDER PRICE P.C.**<br><br><br>By: *Joshua A. Dunn*<br>     Joshua A. Dunn<br>     1633 Broadway, 31st Floor<br>     New York, New York  10019<br>     Phone:  (212) 407-7700<br>     Fax:  (212) 407-7799<br><br><br>*Attorneys for Plaintiff The Huntington National Bank.* |